Filed 8/11/26  In re R.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.S. et al., Persons Coming Under the Juvenile Court Law. | E087760 |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | (Super.Ct.Nos. J305522, J305523 & J305524) |
| Plaintiff and Respondent, | OPINION |
| v. | |
| J.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Laura Feingold, County Counsel and David R. Guardado, Deputy County Counsel for Plaintiff and Respondent.

INTRODUCTION

J.C. (mother) challenges the sufficiency of the evidence supporting the juvenile court's dispositional order removing her children, A.S., L.S., and R.S. (the children), from her care under Welfare and Institutions Code[1] section 361, subdivision (c)(1). We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 2025, San Bernardino County Children and Family Services (CFS) filed section 300 petitions on behalf of the children. At that time, R.S. was seven years old, L.S. was 10 years old, and A.S. was 12 years old. The petitions alleged they came within section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). Specifically, the petitions alleged that mother and D.S. (father)[2] had substance abuse problems, mother and father (the parents) failed to provide adequate and appropriate provisions, supervision, and support, the parents had unstable and unsafe lifestyles, and the children were left without provisions or support when the parents were arrested on August 11, 2025.

The social worker filed a detention report recommending the court detain the children. The report stated that, on August 11, 2025, CFS received a referral indicating that the parents both had outstanding felony warrants and were arrested and taken into

---

[1] All further statutory references will be to the Welfare and Institutions Code, unless otherwise indicated.

[2] Father is not a party to this appeal. Thus, this opinion will focus on mother.

custody, and there were no adults available to care for the children. Mother had a warrant for grand theft auto, and both parents were involved in an assault incident that day.

The court held a detention hearing and detained the children in foster care and ordered predisposition services for the parents.

*Section 388 Petitions and Amended Section 300 Petition*

On August 29, 2025, mother and father each filed a section 388 petition, in propria persona, asking the court to return the children to them, since they were now out of custody. The court summarily denied the petitions. On September 5, 2025, father filed a second section 388 petition, again asking for return of the children, and the court summarily denied it.

On September 8, 2025, CFS filed a first amended section 300 petition on behalf of R.S., alleging a new father, E.J.[3], and adding allegations concerning him.

*Jurisdiction/Disposition*

On September 8, 2025, the social worker filed a jurisdiction/disposition report, recommending that the court find the allegations pursuant to section 300, subdivision (b) true, but the allegations pursuant to subdivision (g) not true. The social worker further recommended the court find father to be the presumed father of the children, find E.J. to be the presumed father of R.S., and order reunification services for all three parents.

The social worker reported that mother and father each had extensive criminal histories of being arrested and charged with various crimes, with some leading to

---

[3] E.J. is not a party to this appeal.

3

convictions. Father's offenses included drug possession, driving under the influence (DUI), battery, and possession of a stolen vehicle. Mother's offenses included drug possession, DUI, burglary, receiving stolen property, and assault with a deadly weapon.

The social worker interviewed A.S., who said he lived with his parents, siblings, and their animals in three recreational vehicle trailers (RVs). A.S. said he and his siblings showered once every three days, and to obtain water, he had to walk to get water in jug containers from his friend's house or he got water from the RV park, and he boiled it on a propane stove in order to shower.

The social worker also interviewed R.S., who said he had two fathers. He lived with father and sometimes visited E.J. R.S. said his family lived in three campers. He said they did not have a shower because they lived out in the desert, and they had to drive to take a shower.

The social worker interviewed L.S., who said her family lived in three campers and a shed. The parents slept in the shed, she and her brothers slept in one camper, and they used the small camper for storage and the big camper for food. L.S. reported that mother sometimes used "drugs" that were in a bottle, and that when her mother drank what was in the bottle, she would act different, like "'all angrily [*sic*]'" and "'kinda crazy.'"

On August 28, 2025, the social worker spoke with E.J.'s mother (the paternal grandmother), who said that, at the beginning of August, mother drove to her house drunk with the two older children in the car. The paternal grandmother reported that R.S.

4

told her there was no running water, electricity, or food at the parents' home.  She also reported that mother admitted a couple times she had no food.

The social worker stated that mother was uncooperative, as she had not made herself available for an interview or visit.  However, on August 29, 2025, she finally spoke with mother.  Mother denied the allegations in the petitions and said the only reason the children were removed was because she was incarcerated, but now that she was out of custody, they should return home.  Mother said she lived with father, but they were not married.  She was unemployed, and when asked what she did for income, she said, "I usually recycle."  Father did "odd jobs here and there."  Mother said father was the father of A.S. and L.S., and E.J. was the father of R.S.  Mother asked how long the interview was going to be and when the social worker estimated an hour and a half to two hours, mother said she wanted to be done with the background portion of the interview and hear the allegations, but she did not want to comment on them.

The social worker was concerned with mother's substance abuse and criminal activity.  She was also concerned that mother was minimizing the reason for CFS's involvement.  The social worker said mother would be referred to parenting education, individual counseling, anger management, random drug testing, and an outpatient drug treatment program.  She opined that it would be detrimental to place the children with mother and stated it was necessary to remove physical custody of them from her.

The court held a hearing on September 9, 2025, and mother, father, and E.J. were present with counsel.  The court relieved appointed counsel for mother and appointed new counsel.  Mother's new counsel said she spoke with mother and was not sure they

would be able to work together effectively, so counsel declared a conflict and deferred to the court to "make a final decision." The court informed mother's new counsel that she needed a good reason to declare a conflict, other than her client would not talk to her, and the court would still proceed since it was ultimately looking toward the children's best interest. The court ordered predisposition services for the parents and set the matter for mediation and a further hearing. The court also ordered the parents to submit to a drug test.

On October 10, 2025, the court indicated it was in receipt of mother's counsel's motion to be relieved as counsel of record due to a "complete communication breakdown" between her and mother. The court granted the request and appointed another new counsel.

On November 12, 2025, the social worker filed an information memorandum to inform the court that the parents had provided A.S. and L.S. with cell phones and R.S. with a tablet, and they were communicating with the children outside the court's order. Further, the parents failed to show up for visits, and mother went to the CFS office and stated she would not take part in any services. The parents also did not show up for their scheduled drug tests. Additionally, mother wrote a letter to the social worker demanding the immediate return of the children to her.

The court held a further hearing on November 12, 2025. County counsel informed the court that the parents repeatedly violated court orders by discussing the case on social media and calling the children on their devices. County counsel asked the court to take

6

away the children's phones and tablet, but the court declined to do so and continued the hearing.

The social worker filed another information memorandum on December 15, 2025, and informed the court that the parents had not signed the consent form for services, had not engaged in any services, and had not drug tested for CFS. On November 19, 2025, the social worker attempted to call mother to inquire of any Indian ancestry, but mother did not answer and failed to return the call. The social worker recommended the court declare the children dependents, remove them from the parents, and order reunification services. The social worker specifically recommended the court find that clear and convincing evidence showed the children should be removed from the parents' custody because there was a substantial danger to the children's health, safety, and well-being, and there were no reasonable means by which to protect them without removing them from the parents' custody.

The court held a hearing on December 18, 2025. Mother's counsel declared a conflict and asked to be relieved. The court relieved her and appointed another counsel and continued the hearing.

On January 12, 2026, the social worker filed another information memorandum and informed the court that the parents continued to refuse services and drug testing.

On January 21, 2026, the social worker filed an information memorandum and reported that she again called mother to ask about any Native American ancestry, and mother asked why CFS needed to know and then refused to answer any questions without her attorney. The parents continued to miss their drug tests.

On January 23, 2026, the social worker filed a second amended petition on behalf of R.S., and first amended petitions on behalf of the other two children, adding allegations that mother and father had untreated mental health issues.

The court held a hearing on January 27, 2026 and dismissed the amended petitions, pursuant to county counsel's motion. Then, father testified, but mother did not. County counsel moved to dismiss the allegations under section 300, subdivision (g), and the court granted the motion. The court found true the allegations under section 300, subdivision (b). As to disposition, mother asked for return of the children that day, arguing there was no clear and convincing evidence of danger to them. County counsel disagreed, pointing out that CFS had attempted several times to engage the parents, but they had been "incredibly uncooperative" and exhibited "oppositional defiance."

The court noted that it had read the reports and then found father to be the presumed father of L.S. and A.S. and E.J. to be the presumed father of R.S. The court stated there was clear and convincing evidence the children should be removed from the parents' and E.J.'s custody since there was a substantial danger to their physical health, safety, and emotional well-being. The court declared the children dependents and ordered reunification services for the parents and E.J. It also incorporated all findings and orders not read into the record.

### DISCUSSION

Mother contends the juvenile court's removal order is unsupported by substantial evidence, noting the court did not state the facts on which it based its decision. She also argues there were reasonable means to protect the children short of removal from her

8

home, such as ordering in-home therapeutic services and conjoint therapy for her and the children, and unannounced in-home visits.  Mother further contends that CFS made no reasonable efforts to prevent or eliminate the children's removal.  We disagree.

A.  *Relevant Law*

"Before the court may order a child physically removed from his or her parents, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal."  (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 145-146 (*Hailey T.*); § 361, subd. (c)(1).)

"The court shall consider, as a reasonable means to protect the minor, each of the following:  (A) The option of removing an offending parent, guardian, or Indian custodian from the home.  [¶]  (B) Allowing a nonoffending parent, guardian, or Indian custodian to retain physical custody as long as that parent, guardian, or Indian custodian presents a plan acceptable to the court demonstrating that they will be able to protect the child from future harm."  (§ 361, subd. (c)(1).)

"The standard of review of a dispositional order on appeal is the substantial evidence test."  (*Hailey T.*, *supra*, at p. 146.)  "Under this standard, we determine whether there is any substantial evidence, contradicted or uncontradicted, which supports the conclusion of the trier of fact."  (*In re G.C.* (2020) 48 Cal.App.5th 257, 265.)  However, where the burden of proof supporting the juvenile court's order requires a showing by clear and convincing evidence, as does the removal order in this case, our review must

take into consideration that heightened burden of proof. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.)

Thus, "when reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th 989, 995-996.)

"All evidentiary conflicts are resolved in favor of the respondent, and where more than one inference can reasonably be deduced from the facts, we cannot substitute our own deductions for those of the trier of fact." (*In re G.C.*, *supra*, 48 Cal.App.5th at p. 265.)

## B. *There Was Sufficient Evidence To Support the Court's Removal Order*

Mother argues substantial evidence does not support the finding, by clear and convincing evidence, that there would be a substantial danger to the children if returned to her custody. She points to evidence showing that, by the time of the disposition hearing, the family home had running water, the children reported they always had food to eat and denied any abuse, and they felt safe with her. In addition, she and father were no longer in custody, and there was no evidence they were charged for any crimes with regard to the most recent incident.

The undisputed evidence showed the family lived in three RVs in the desert, and the children slept in one of them by themselves. The children only bathed once every three days and lacked access to basic necessities, such as food, electricity, and readily

available water. Mother was unemployed and had no apparent consistent income. Further, the evidence indicates she would get drunk in front of the children. Mother also drove drunk with the children in the car. On one occasion, R.S. swallowed Drain-O while in mother's care, as she was reportedly asleep. Moreover, mother felt the only reason the children were removed was because she was incarcerated, but now that she was out of custody, the children should return home. Thus, mother clearly saw no need to implement any changes, as evidenced by her complete refusal to participate in services.

For these reasons, we conclude substantial evidence supports the juvenile court's finding by clear and convincing evidence that there would be a substantial danger to the children if returned to mother's care.

Mother claims there were reasonable means to protect the children short of removal from her home, such as ordering in-home therapeutic services and conjoint therapy for her and the children, and unannounced in-home visits. However, there were no services or therapy that could have ensured the children's safety and well-being, given mother's flat refusal to engage in any services offered to her, failure to comply with court orders, and failure to cooperate with CFS in any way.

Mother further contends that CFS made no reasonable efforts to prevent or eliminate the need for the children's removal. She asserts that CFS did not follow up with her regarding what options she had to address the issues in the case, such as her failure to provide adequate provisions to care for the children. However, mother initially did not even make herself available for an interview with CFS. When she did finally talk

11

to the social worker, she refused to even discuss the allegations against her. The record indicates the social worker referred mother to a parenting program, individual counseling, anger management, random drug testing, and an outpatient drug treatment program. Mother refused to participate in any services or submit to drug tests. Instead, she minimized the reasons for CFS's involvement.

We acknowledge mother's contention that the court did not state the facts on which it based its decision to remove the children from her custody. The juvenile court is required to "state the facts on which the decision to remove the minor is based" (§ 361, subd. (e)), and the court does not appear to have done so. However, even if the court erred in failing to state its factual findings, any error was harmless. Given the evidence discussed above, including the deficient living conditions of mother's home, her failure to discuss the allegations, her lack of compliance with court orders, her lack of cooperation with CFS, and her refusal to engage in any services, it is not reasonably probable the court's findings would have been in favor of her continued custody had it expressly made findings under section 361, subdivision (e). (*In re L.O.* (2021) 67 Cal.App.5th 227, 247 ["'[C]ases involving a court's obligation to make findings regarding a minor's change of custody or commitment have held the failure to do so will be deemed harmless where "it is not reasonably probable such finding, if made, would have been in favor of continued parental custody"'"].)

In sum, we conclude that substantial evidence supports the court's findings that the children would be at substantial risk of harm if returned home and there were no reasonable means by which they could be protected without removal.

12

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
                                                                    J.

We concur:

McKINSTER
                    Acting P. J.
MENETREZ
                    J.